Grebka, your honor. Thank you and good morning. My client, Mr. Ricardo Herdocia Jarquin, is a lawful permanent resident who has lived in the United States for over 30 years, and he's the father of three United States citizen children. Mr. Jarquin is subject to a final removal order for one reason, and was locked in immigration detention for more than three years. The BIA, and that reason is that the BIA erroneously concluded that Mr. Jarquin's conviction under California Penal Code 417.8 is a crime of violence, as defined in 18 U.S.C. Section 16A. But 417.8 is not a crime of violence, because it does not require, categorically, as an element, the use, attempted use, or threatened use of physical force against the person or property of another. 417.8 merely prohibits a defendant from exhibiting a weapon with the intent to resist or prevent the arrest or detention of himself or another, which encompasses exhibiting a weapon with the intent to resist or prevent arrest by escape or self-harm. 417.8, therefore, is not a crime of violence, because it does not, categorically, require force against another, and it does not require the level of force required for a crime of violence under Supreme Court authority. Both of these... But wouldn't an arrest, exhibiting a weapon in the course of resisting arrest, wouldn't that always involve another person, and therefore, potentially, some risk to the other person? How would you evaluate that? Well, for several reasons, the law shows that 417.8 does not always require force directed against another. In fact, there are two convictions for this offense demonstrating that it's sufficient for a weapon to be exhibited to prevent arrest by self-harm. One of those cases is the Tan Na Sang case. In that case, officers pursued a suspect, cornered the suspect, and he drew a knife and then started slashing at his own wrists and testified at trial. I wasn't trying to threaten the officers. I just wanted to leave this world, in the words of the defendant, because I was a three-striker and I didn't want to go to jail forever. And the California Court of Appeals specifically held that to the extent the evidence showed that Mr. Sang used the knife to threaten himself, not another, himself, and thereby deter the officers from making the arrest, that's sufficient under 417.8. And under this court's precedent, including the Flores-Vega case, if the petitioner can show even one instance where a statute has been applied in an overbroad matter, then it's categorically overbroad and it's not a crime of violence. And in this case, we have not just Tan Na Sang, we have People v. Lawhead. In that case, officers pursued a suspect and he exhibited a gun and pointed it at his own head. And in fact, was so intent on exhibiting self-harm that he fashioned a sling to hold the gun in his mouth during the encounter with the officers. And in that case, too, the defendant was convicted of 417.8 in circumstances showing exhibiting a weapon with the intent to prevent arrest by self-harm, not by harm directed against another. So those two cases are dispositive, but there's also the text of the statute itself, which nowhere requires force or a threat of force directed against another. In fact, the text only used for the word of another refers to preventing the arrest or detention of another. And that omission of any requirement in the text to exhibit a weapon with the intent to threaten or use force against another is particularly compelling when comparing 417.8 to its statutory neighbors. Because a fundamental principle of statutory construction under California law, which is binding on this court when construing California law, is that if one statute on a particular subject contains certain language, but another statute doesn't contain that language, well that the legislature intended to encompass different conduct. That's the In Re Young case from the California Supreme Court. And here, 417.3, the statutory neighbors, specifically requires exhibiting another exhibiting or drawing offense. And this offense, 417.3, specifically requires in its text exhibiting weapon in a threatening manner against another person. Words are there against another person in a motor vehicle in such a way that a reasonable person would fear bodily harm. So 417.3 tells us the California legislature knows how to write a statute that encompasses only threats of force against another. And it could use that language in 417.8, but it didn't. None of those words appeared. And the only use of the word of another is not a reference to force against another. So that's one way in which 417.8 is categorically overbroad. Another way in which it's overbroad is... Let me ask it in a different way, Mr. Tripka. Granted, they're likely in these cases like Sang and perhaps Lawhead as well, there is no intent, specifically no intent, to injure another. That's pretty clear. How do you discount the fact, though, that because a weapon is there, there is the possibility of harm? There's still a threat of harm to another person because a weapon is present. How would you respond to that? Well, the California Court of Appeal in cases like People v. Simons has said that under California law, exhibiting a weapon is harmless per se. And it's a crime because by virtue only of the harm that may result, not that necessarily will result. The California Court of Appeal reaffirmed that in People v. Pruitt, where it rejected the argument that a 417.8 conviction necessarily includes finding the weapon signaled a potential threat, which is directly responsive to the court's question. The California Court of Appeal said a 417.8 conviction doesn't necessarily require showing the weapon signaled a threat. In addition to the extent that the mere exhibition of a weapon could be reasonably interpreted by an officer, for instance, as signaling a threat. Well, if the defendant didn't intend that, perhaps exhibiting a weapon was reckless about the risk of an officer feeling threatened. But that's not enough. Mere recklessness is not enough to establish a categorical crime of violence, as this court has held in the Flores-Lopez case. And there's other very compelling Ninth Circuit case law, in particular Flores-Lopez. Judge Maez, we've just lost Judge Wofford. Could you just hold on for a second? We'll hold the clock for six minutes. Okay, I'll turn off public audio while we deal with this. Are we good to go? Yes, sir. We're ready to go. Okay. Kathy, why don't we reset the clock at seven minutes? Okay. Okay. Okay. And then, as I recall, counsel, you were just finishing up an answer to Judge Two-Nine's question and about to, I think, switch to the other reason that you had argued that the statute 417.8 is not a crime of violence. Yes. Yes, Your Honor. Thank you. And precisely where I believe we left off was this question, doesn't 417.8, the exhibition of a weapon with the intent to resist arrest, inherently or inevitably carry with it a threat against another or a threat of violence at all? And the answer is no, because the California Court of Appeals says the opposite. No, because there are actual convictions under 417.8 in cases of self-harm, not threats against another. And because the text in a comparison of other statutes, including 417.3, show a deliberate omission by the California legislature of that requirement. Another reason that this type of argument doesn't 417.8 inherently involve a threat of violence against another is that this court has specifically rejected that type of reasoning. In Flores-Lopez v. Holder, where the court held in the context of ruling that a resisting arrest offense, Penal Code 6-9, is not a crime of violence, it held the idea that resisting an officer will inevitably lead to the use of violent physical force is too speculative to support a conclusion that a crime is categorically a crime of violence. So this type of argument has been specifically rejected by this court already. It's also been rejected by the United States Supreme Court, because this court should not effectively resurrect Section 16b, which in Sessions v. DiMaia, the Supreme Court struck down. Section 16b, Title 18 U.S.C. Section 16b provided that define a crime of violence as any offense that is a felony and by its nature involves a substantial risk of physical force against the person or property of another. Well, this argument doesn't 417.8 inherently by its nature involve a risk of force against another. That type of reasoning has been struck down when the Supreme Court in Sessions v. DiMaia struck down Section 16b. I just want to touch briefly on a few arguments that the government has made, unless the court has any other questions on this subject. The government argues that Mr. Harkin's claim that he has not been convicted of a crime of violence has not been exhausted. And in particular argues that my client's specific critiques of Reyes-Algaraz and other arguments must have been presented below. That's not the law. The law is that only claims must be exhausted, not arguments. And this court in the P.R.S. Guyon case made that ruling. And once a claim is preserved, any argument may be made in support of that claim. Counsel, this is Judge Watford. Let me jump in on that point. The argument, as I understand it from the government, is that the claim at issue is your client's contention that he is not removable. And they say, or the government says, that that claim was never raised at all in his pro se BIA brief. All he argued were the grounds for relief from removal. And I think that's where they say the argument that you've just spent time on, on 417.8, that goes to whether he's removable at all. And he just simply never contested that before the BIA. So can you respond to that specific argument? Of course, Your Honor. So first, my client was unrepresented below, and his arguments before the BIA are broadly construed in the interest of justice. He specifically argued on the first page of his brief, available at Administrative Record, page 20, that he denied the charges of removability. The only charge of removability in the NTA, the notice to appear available at page 947 of the record, was that he was removable because his 417.8 conviction was a crime of violence. That alone is enough to exhaust the claim, as this court has held in similar circumstances of Viscara Ayala. He also exhausted the claim by arguing that his conviction was a non-serious, non-violent offense. That's available at page 32 of the record. And that's just one way in which the claim has been exhausted. The other way is that the BIA ruled on it by citing Reyes-Algaraz to the point that 417.8 is a crime of violence, and because the BIA, this is the third independent basis for exhaustion, ruled, pursuant to matter of Bourbano, that it was adopting the immigration judge's rule. And therefore, all issues presented to the immigration judge are preserved and presented to the BIA. And at administrative record, page 988, my client, counseled at the time, specifically argued to the immigration judge that 417.8 is not a crime of violence under section 16A because it does not have as an element the use of attempted use or threatened use of physical force against another. The very claim, the very argument, he's making here. And the immigration judge even ruled on it, finding that the legal argument was not persuasive. That's available at page 985 and also page 7 and 8 of the record. So, very briefly, Reyes-Algaraz does not control this case because it did not consider whether 417.8 requires force against another. That issue was not raised by the parties. It was not discussed by the court. And as this court has held in highly similar circumstances in Morales-Garcia v. Holder, Reyes-Algaraz, therefore, offers no authority on that point. In any event, the ruling it did make, that 417.8 necessarily involves a threatened use of physical force, has been superseded by intervening Supreme Court authority, including Johnson and Stokeland. So, for that reason as well, it's not binding. With that, I will reserve my remaining few seconds for rebuttal. I'll give you some time for rebuttal. Let's hear from the government. Good morning. May it please the court. Robert Tennyson for the government. Very briefly, I would say Petitioner's argument with regard to self-harm is an interesting one. I don't believe it has any merit. But in any case, it's an academic one because in Reyes-Algaraz, this court held that CPC section 417.8 is categorically a crime of violence under section 16A. Wasn't that before Johnson and Stokeland, though? That was before Johnson and Stokeland, but Johnson and Stokeland don't make a difference. First, if you look at the California cases that have to do with exhibiting or drawing a deadly weapon, these cases involve inevitably a gun or some other deadly weapon. And under those cases, they define deadly weapon as weapons that have the potential to cause, what is it, death or serious injury to another. Under Johnson, the standard for whether or not something is violent force is whether or not it is capable of causing physical pain or injury to another. The standard that the court set forth in the California Supreme Court cases with regard to section 417.8 is a higher standard with regard to a deadly weapon than the standard that exists for under Johnson. And don't forget, this court took Johnson to be a very high standard. Subsequently, the Supreme Court in Stokeland said, no, that's a much lower standard, particularly in the instance of robbery, right? It's just that force necessary to overcome the resistance of the robber. Now, here we're talking about, can I clarify something? In Ria's, the Ria's case, Ria's Alcarez, was a categorical approach applied in that case? I believe the categorical approach was applied in that case. I mean, the court said that this necessarily, right, that the offense necessarily implicates a threat of the use of force against the officer. With that use of the word necessarily, very clearly indicates that that case is a categorical approach case. So given that, the other point I want to make, let's go to whether or not the petitioner has exhausted these claims. First off, he says the petitioner actually raised these claims in his brief to the board. Again, pro se cases, in those sorts of cases, exhaustion is a bit of a liberal standard. Nonetheless, the language that the petitioner has pointed out to say that he did exhaust it doesn't actually do that. For instance, the petitioner has stated that, or a post-counsel has stated that, the petitioner in his brief did not state that he denied the charges of removability, right, in the administrative record at section 86. That's not exactly what he said. What he said is, I was placed into removal proceedings with an NTA and denied the charges of removability. Which means that what he's saying is, factually, that's what I did in the past. And that's a factual claim about the case, not a claim about removability. And the rest of the paragraph is about explaining that his conviction rested on grave errors. Literally, when he is discussing his conviction and his entire factual statement, he's not contesting whether or not section 417.8 is a crime of violence. He's contesting whether he was properly convicted under section 417.8 to begin with. That does not exhaust that second issue. Second, to the extent the board referenced Reyes-Alcarez in its decision, it did so in response to the question of whether or not he committed a dangerous or violent offense. And that purely has to do with an entirely different question. And that is, what is the standard that he had to show in order to get a discretionary waiver so that he could readjust his status? If he had committed a dangerous or violent offense, then he had to show exceptional and extremely unusual hardship in order to get the waiver. And the thing is, is that the board said, well, we don't have to get into all of the stuff the immigration judge got into to determine that he was dangerous and violent. It's a crime of violence. It didn't go through and think that it was appropriate to analyze. It clearly didn't identify the issues. Is Reyes-Alcarez still good? Or is A, Reyes-Alcarez then subsequently, you know, is Johnson clearly irreconcilable or Stokelyn clearly irreconcilable with Reyes-Alcarez? That's not what it's considering. It's considering the separate, you know, dangerous or violent offense question. And then with regard to Bourbono, Bourbono applies, right? Bourbono, under this court's decision in Ohio, Bourbono will revitalize, will bring to the surface any of the determinations that the immigration judge had made. If and only if the board, after citing Bourbono, doesn't then go and, what, qualify it, doesn't exclude parts of the IJ's decision, which is exactly what the board did here, right? When it talked about dangerousness or violence, it didn't go through the various factors that the board identified. It didn't go through, as the board said, oh, look, you were similarly, you were at the same time convicted under section 16-9. You were convicted by a jury. You were holding a knife out at gun, you know, you were holding a knife out at the officer. None of those things come up. The board just says, look at the elements. It's a crime of violence, dangerousness. And similarly, when it comes to the argument that he has committed a particularly serious crime, the board says, you procedurally defaulted that. You've waived that. It doesn't get into the immigration judge's decision. Therefore, under this court's previous decisions, for example, in Abebe, Bourbono doesn't revitalize the immigration judge's decision. And to the extent that the immigration judge's decision was revitalized, it's important to note that the immigration judge in his decision denied that, one, the petitioner's argument that this offense, section 14, I guess, 417.8, is not a crime of violence. His argument was to say that Reza Alkarez was wrong because it didn't involve a threat, not a threat to another, nor did he say because it didn't involve violent force. Neither of those things. And the immigration judge, to the extent he considered those, said what he was talking about is whether or not, whether this case went down under 16-B, not 16-A. And so none of that raises that claim back up to the surface. It is unexhausted. But to the extent it is, I mean, but to the extent it is exhausted, this entire thing is what? It's unaddressable under the prior panel rule, right? If the petitioner is correct that any time that, oh, any time that they can come back and say, well, there was this argument that you never considered. And don't forget, petitioner, in his brief, refers to, in his statement of issues, refers to, one, the self-harm argument and his self-harm position, and to his violent force position as issues, not arguments, issues. That to the extent that any time someone raises some new argument and characterizes it as an issue or however they characterize it, this court gets to revisit it. But that way, but by that way, lies chaos. I mean, the whole point of- Counsel, it's Judge Watford. Let me jump in, if I could. I have a question on a particular point. What's a little bit odd about the categorical analysis is this exception we have for circumstances where the petitioner can come in and show that, you know, there was a single case, let's say, or a handful of cases in which a conviction was allowed to stand under circumstances that would render the statute at issue overbroad. Right. But so let's imagine that we've got, we as the circuit, take an initial crack at a case. We look at the statute and say, boy, yeah, it sure does seem like it fits the bill for a, you know, a categorical match. And, you know, from what we can tell today, there aren't any outlier cases that would call that conclusion into question. Let's say, though, that, you know, 10 years later, the state courts have ruled in a way that creates these outlier decisions. And for the first time, those are brought before our court. I assume you would concede in those circumstances that we're not bound by the earlier decision that we would be able to take a fresh look at whether the statute is a categorical match. Now that there are these new state court decisions that didn't exist before. Would you concede that? I would concede that. And then I would add that this isn't that case. All of those state court decisions. Let me let me just let me just jump in. It is this case because both of the decisions. Well, you can correct me if I'm wrong, but as I understand it, both of the decisions that petitioner relies upon post-date our decision in Reyes-Alcarez. Is that wrong? So one of the unpublished decisions does not. One of the and that's saying comes before Reyes-Alcarez. But Lawhead comes afterward. So and neither of those are published decisions out of the California Supreme Court. So this is a real realistic probability case. And don't forget for this case for the self-harm argument to work. It can't just be that the individual threatened themselves. The individual has to exclusively threaten themselves. There has to be no threat to the officer. Right. And while petitioner's counsel has gone on about the threat to the individual. So, for example, in song, the individual threatened to cut himself. And Lawhead, the individual threatened to hold a gun, held a gun to his head. In both of those cases, there is evidence that the officers feared a threat in song. What happened is the petitioner held a knife out and threatened them before he cut himself in Lawhead. The the officers who arrived on the scene were afraid that he was that it was an easy reach for him to pull the gun out of his mouth and aim it at them. So in both of those cases, you don't have the exclusive threat to self that the petitioner said that the petitioner would need in order to show that these cases involve self-harm and only self-harm and not a threat of harm to another. So. With regard, and then I would also add that all of the published decisions, so, for example, Simon or Pruitt. Those cases all predate Reyes-Alcarez. Those kinds of those discussions. So Reyes-Alcarez had all of that before it and had sung before it before it issued its decision. I think you need to check the dates on on song song. I have a date. I think it's May 13th, 2008. And Reyes-Alcarez is April 2008. So I think you're just wrong on the dates. Right. Song is the song site is 2004 Westlaw one thousand six. I mean, one of six, seven, nine, six to California Court of Appeals 2004. So let me really quickly. I can double check here as well to make sure that's correct and find out exactly when song came down. I have May 13th, 2004. Is that wrong? That might actually be right. And let me double check. Is it is May 13th, 2004, not 2008. I thought that Reyes-Alcarez was also a 2000. It was a postdated 2004 decision. But if it's not, I stand corrected. It's April 2004. OK, so that would mean that song does postdate it. I had for some reason thought that song predated it. My I stand corrected and I apologize to the court. But in any event, it doesn't matter because it's not a threat of exclusive harm to the individual. And the public have published cases do predate it. Let me move on. Mr. Tennyson, let me just ask you a hypothetical question. Under 417.8, could a person be convicted for if they're running away from an officer and a weapon or a tool of some kind falls out of their pocket while they're running away from the officer? I don't believe that they could because they're not drawing it and they're not. Then the weapon is not coming out with the intent to frustrate the arrest. Right. The whole point of the statute is that the end. This is the reason why it has to be some kind of threat to another. If you think about in these terms, what has to happen is that the individual has to draw or exhibit the weapon. It has to be a deadly weapon. It has to be either a gun or some weapon that conveys that threat of force. Right. And it has to be to an officer to frustrate the arrest. So if an individual just has a weapon drop out of their pocket, if they have a screwdriver or a or what? Some sort of wrench fall out of their pocket. Unless it is being exhibited in some way to prevent that, you know, to to prevent that arrest, then it's not going to. You know, with the intent to prevent the arrest, then it's not going to fall within the contours of the statute. Well, if he picks it up and puts it back into his pocket, the officer is probably going to be a bit frightened. Again, there is the direct. I don't know. It's all going to depend upon whether or not there is the intent to frustrate the arrest and how it's being used within the context as a deadly weapon. Because the thing is, remember, to be a deadly weapon, it has to be being used. It's an object that has to be utilized in such a way that it conveys that threat of serious bodily injury or death. So it's not so just dropping out on the ground and putting it back in his pocket may not convey that. But again, it's all going to be dependent upon the context and how and how that operates. Right. And so but it has to require that intent to Fred to frustrate the officer's attempt to arrest through the use of that, you know, through the exposition of that deadly weapon or, you know, in the case of a firearm, just the firearm. Again, there's no reason for this court to revisit Reyes-Alcarez. But if it does this both under Johnson and Stoeckling that are neither clearly irreconcilable with this court's decision in Reyes-Alcarez, nor does this self-help argument somehow get revitalized, nor is it successful. And none of this has been exhausted in the first instance. This court has no further questions for me. The government rests. Thank you very much. I believe there's some rebuttal time. I'll give you two minutes for rebuttal. Thank you, Your Honor. Very briefly, the court is precisely correct that Reyes-Alcarez was decided before the law had in some cases. The Reyes-Alcarez was decided in April 2004. Law had in 2015 and the Song case on May 13th, 2004, an independent reason that Reyes-Alcarez is not controlling. To the court's question, did Reyes-Alcarez apply the categorical approach? At most, it applied a partial categorical approach because it considered only whether conviction under 417.8 necessarily involves a threatened use of physical force, period. The opinion is very carefully written and it didn't go on to say physical force against the person or property of another because that issue wasn't raised by the parties and it wasn't discussed either. The court, in the Morales-Garcia v. Holder case, dealt with almost the same situation where a prior opinion of this court did a partial categorical analysis in the Gregata case involving a crime of moral turpitude analysis for California Penal Code 273.5. And the court held that it wasn't bound by the partial categorical analysis of the prior case. Same analysis applies here. Finally, what the government is saying about the immigration judge's ruling is squarely contradicted by the record. The government contends the immigration judge only ruled on 16b and held that the claim was waived. I'm reading from page A to the record where the court addressed my client's motion that he was not convicted of a crime of violence. The court denied respondent's motion, finding that respondent's conviction remained an aggravated felony crime of violence under Title 18 U.S. Code Section 16a. So with that, the petition should be granted and the order of removal vacated. Thank you. Thank you very much, counsel. Two things. One, we appreciate both counsel's arguments this morning. Very interesting. And Mr. Chirutka, if I pronounced that correctly, thank you for taking on a pro bono case. The court appreciates that very much. It's been a privilege. Thank you, Your Honor. All right. The case is submitted at this time, and thank you again.
judges: Paez, Watford, Tunheim